My name is Alfonso Kennard, and I represent the appellant, Mr. Palomo, on this matter. the thrust of my time today, unless the questions take us otherwise. yet another example of a case where a district court has taken liberties and has put themselves into the position of a trier of fact. Well, there is a kind of a possible flaw in the case, and I think we're going to have questions about it. And it has to do with if you report unprotected activity of another party, you have to say you're reporting as a result of sex or age or under the law, you have to say that it's related to that. And is there any evidence in the record that he took action because it was based upon discriminatory reasons? Well, I believe the record has data and information to... Well, can you help us with what the record says? In his deposition testimony, Mr. Palomo asserted that he thought it was not correct, that it was unfair that the males were being, he was being asked to terminate the males just because they were males. Right, but did he say that in order to have a claim, you know, one of these third-party claims, you have to have said you're trying to terminate people because they're males and I'm not going to do that. At the time that he's complaining to the employer contemporaneously on the hotline or wherever. Correct. And the record does have information to indicate that he did report it, that he did go upstream, he went to a supervisor level, he went to the human resources... And said they're trying to do this because it's a man and I think that's discriminatory. Where is that in the record? I don't believe, Judge, that he used those buzzwords, that the terminology that us as employment law practitioners would use on a regular basis were used here. So I am not aware that those buzzwords were used. But what we do know here is that women were in fact given preferential treatment by this Mr. Lozano, who is the bad actor here, similar to the case that was heard before us here today. Title VII does in fact protect against the insinuation in the workplace that one sex, one gender, is more readily equipped to handle any type of function than the other gender just for sake of gender. Now it would be as if Judge Davis decided that, I don't know that he'd be wrong, that the female justices on this court were more equipped, better organized, and more ready to issue opinions than maybe his male counterparts. Now regardless of whether or not he's correct there, that would not be legal in this private enterprise context. We have evidence in the record to show that there was preferential treatment. We have evidence here to show that remarks were made. There's a record site for that. And that's something that I'm happy to provide after in subsequent briefing. I don't have the ROA in front of me as to that particular point. But what we do know is that statements were made, comments were made, that women work better, though that was not refuted at the trial court level. Okay, but just saying that women work better by itself, how is that discrimination under Title VII? Well, it's actually not by itself here, Judge Haynes, because we know that in fact he was terminated and replaced with a younger woman. Okay, now I want to ask you about the replaced. The evidence as I understand that you have is some phone call that your client got and that Alleman was now the manager. If we were to reverse and remand and this was to go to trial, what evidence would you put on, because Flowers denies that. They said Alleman didn't replace, okay, didn't become the manager. So what evidence would you put on specifically to prove that Alleman was the manager? Well, specifically Ms. Alleman was in fact put in a position, they do not dispute, and we can get this testimony from the supervisors that would appear at trial, that she in fact went into that function. I think this is an issue of semantics. I think it's an issue of clever companies. What evidence, though, I mean, I'm not saying what might you get. What if we looked in the record as to what you could call, if we looked at the record as it is now, as to what you could call at trial, who has said that she maybe wasn't called the manager, but she was the manager? Who has said that? We do have testimony from Mr. Palomo. We will have testimony from the corporate representatives. Okay, but Palomo was based on this phone call. That's correct. Okay, but other than that, other than the phone call evidence, what other evidence do you have? Well, we know that she's on premises. We have evidence, and it was not disputed, that she was in fact at that facility, formerly known as the Diana's Baking Company, that was subsequently taken over by Flowers Foods. We know she was there. The fact question is, what was her functionality there? They don't dispute at all that she was working, Ms. Aleman was working at this facility at this location. The fact question is, what exactly was she doing? What evidence have you sought in discovery, etc., in the trial court to establish what she was doing? Well, the evidence that we have secured thus far, and that ultimately the jury should get to decide, is was she acting in a supervisory function? The evidence is that she was there, in fact, according to the statements by Mr. Palomo. Mr. Palomo bases it on a phone call. And that is not... If I walk into Walmart and I say, oh, John must be the manager, how does that prove John's the manager? Just because I think so, based on going to Walmart. It would be as if you said, oh, John's there, and he's the manager, and then filed a lawsuit in providing briefing, and no briefing comes back in response to say anything other than this individual was not formally designated as a supervisor. I think we missed the point. We know she was there. We know that she was acting in an employee capacity in the building. That is not disputed. In fact, that is undisputed in the record that she was there in an... It doesn't help you, though, does it? It does help us judge that she was there in an employer-employee relationship because right now what we're looking at, steps one through three of the McDonnell-Douglas analysis are not in dispute. The only part that's in dispute is number four. Was he replaced? Of course, you don't have anything in this record. See, we're going on a summer judgment record. You don't have anything in the record saying she was a manager except this hearsay phone call. And again, we would dispute that it was a hearsay phone call. It was a present-sense impression, and that's still a fact question. The fact question is was she a manager or not? I'm saying how does some person who goes to the store know who the manager is? I mean, how can they prove that? Even if that person came in and said, oh, I think that she was a manager. Well, how do you know that? Well, I just think that. She just seemed like the manager. I mean, how is that proof of anything? Well, it's not in dispute that she wasn't there in some managerial function. The only thing that's in dispute is whether or not she had the title of supervisor or not. That is what's in dispute. I don't know that that's true, though. I mean, I don't see that there's requests for admissions or something that she performed all of his job duties or some of his key management job duties. There's nothing in the record that says that. I mean, it could have been that you could have asked for a request for admission or an interrogatory answer. I can think of a lot of ways to get it in, but I don't see that you have it in. And we certainly could have. Let me ask you this. Do you have the evidence as to how old this lady was? The record reflects that she was 32 years old, I believe, Judge, 32 years old versus Mr. Paloma. That's 59. Now, we did designate, and in our initial disclosures that are required, witnesses that we believe would, in fact, testify that she was the manager. Now, I get it. We could have done this. We could have sent out this discovery, but we're not required to. We just need to disclose who we believe, at trial, will, in fact, be able to provide testimony to substantiate these claims. And as plaintiff's lawyers, I'm... Is that just Paloma on this point? No, not necessarily. The managers, the supervisors, the corporate reps, these individuals were designated as individuals with knowledge of relevant facts that would have been called to testify. Well, and in the heart of COVID and not having every resource in the world to be able to take every single deposition, we're not always... We don't always have that luxury, Judge, first off. Second off, to get... To nail that down at a deposition, we don't always have to do that. When we have designated the individuals that can testify to that at trial, we don't necessarily always have the resources to depose every single individual when we're going up against these behemoth companies. We just don't have that luxury. Is there... What else would you like to talk to us about? Your Honor, I think going back to the Cantex case, I think that's important here. That speaks to the present-sense impression. I know that... I now know that is a sticking point here is how we get to that fourth prong of whether or not he was actually replaced with someone that was younger and female and outside his protected class. Cantex addresses that. This Court has held that these types of communications are present-sense impressions and can be evidence that would lead... that would allow us to get to a trier fact, that would allow this to be taken out of the judge's hands and into the hands of a judge. If I sense that you're a lawyer from Louisiana, does that make you one? Absolutely not, Judge. You're a lawyer from Texas. Well, I'm in Louisiana today. Okay, but... And so I sense that you're a Louisiana lawyer, but I'm assuming that you're not, that you're certified in Texas and not in Louisiana. So if I said, oh, yes, Mr. Kennard, I sensed him as a Louisiana lawyer, he just seemed like one, how is that evidence of that? I would not go testify to that. Sure, Judge, I appreciate it. I'm just saying. And I'm walking into a Louisiana court room. I'm in New Orleans, Louisiana. I'm wearing a suit for whatever that's worth. I'm just happy to have one that fits post-COVID. And I am here arguing case law in front of a panel that's situated here in New Orleans, Louisiana. Without anything more, there may be a fact question as to whether or not Alfonso Kennard is, in fact, a Louisiana attorney. But guess what? We have other evidence here. And I was here and I argued Godot. And these statements are undisputedly on the record that this individual preferred women. And those are not stray remarks here. Those are, in fact, go to the heart of prima facie. If it's good enough for one of the first three prongs, it's good enough to get us past pretext and to a jury. This court found that those statements were not, in fact, stray remarks. And that alone, setting everything else aside, gets us to a jury because now we have just that little bit of prima facie evidence where these statements that would, previous to Godot, would be considered stray remarks are, in fact, evidence of discrimination. Well, you're not arguing it's direct evidence. You didn't argue a direct evidence case, did you? No, we argued a circumstance. You argued the McDonnell-Douglas factors, didn't you? That is correct, Judge. Well, then you've got to do number four. And we have number four. Number four is still in question. There is a fact question as it relates to Ms. Aleman's functionality. That is not something that a judge can just outright assume works in the favor of the defendant. In fact, it, as we all know, goes the other way. These facts should be where there is a fact question. Well, they move for summary judgment, and you're the one with the burden to prove. They've got to move, so they do that. Now, you've got to at least bring evidence that would create a fact issue in order to survive the motion for summary judgment. And as I understand it, your evidence is this phone call that Palomo got. Is there anything else on this issue of Palomo being replaced by Aleman, whatever her title is, that she replaced him in this position? I'm not aware that we have any other evidence that is presently on the record, but I don't want to discount the value and import of the evidence that is in the record to ignore the fact that this phone call, and I don't want to minimize it as a phone call, it was, in fact, a present-sense impression that made its way into this record. Wasn't it a phone call? Yes, but I don't want to minimize it as just a phone call. This is evidence on the record. And the person that called was a customer, right? That is correct, Judge. And so if we're going to just trivialize this as a phone call, well, then this court is then ignoring the precedent that it has set in Cantex, where this is, in fact, evidence for purposes of getting past summary judgment. I see that my time is almost up, and I reserve five minutes for rebuttal. Thank you, Judges. May it please the Court. First, please accept my most sincere apologies. I mistakenly thought the number would update in the attorney room and let me know to come over, so I apologize, and certainly did not mean any disrespect at all. First, to address some of the points that Mr. Palomo's attorney raised in speaking with you, your questions were directed at some of the key points in this case, on which I believe summary judgment was appropriately granted. The one comment that Mr. Palomo identified that arguably related the most to gender was, ladies work better than men. And that comment, according to Mr. Palomo, was directed toward two male clerks that worked in the store, not even to Mr. Palomo. But Mr. Palomo did not identify that comment in making his internal complaint to Flowers. There was nothing about his complaint that would have indicated to Flowers that he was complaining of some sort of practice that he believed to be in violation of the law. Did he raise gender or sex in making a comment to the employer? In his written complaint, or the transcription of his written hotline report, there was no mention to gender or age. In his deposition, he testified that when he was interviewed by a Flowers representative, that he mentioned the one comment that was allegedly made by Ms. Filosano to Mr. Palomo and a distributor, oh, y'all like each other so much, why don't you go home and sleep together? That was the only comment that he identified during the interview itself. But did he say, I was asked to do something illegal because I was being asked to fire people because of their sex? He didn't discuss any of that. In the complaint. Or the interview. That's correct. And he doesn't claim that. He did not. He didn't complain about firing the two men? He did not. And then on this issue of the phone call and all of that, kind of getting to the core of it, you all deny that Aliman replaced Palomo, right? That's correct. And that's the only evidence before us. And then this phone call, I mean, does a customer know what somebody is and who they replaced and all of that? No, I would agree. We submitted an affidavit that Mr. Palomo's position was not replaced. But is it semantic? Because, you know, that doesn't work. If you just say that we're not going to have a manager, we're just going to give all the managerial functions to the baker or whatever. I don't know what the term, what the role would be. Then it still would be, they would still be the replaced person even if it's not the position replaced. The evidence showed that Martha Aliman, and I use her first name because somehow there are two Alimans in this case, but Martha Aliman was second in command to Mr. Lozano. So she was already at a higher level position than was Mr. Palomo. So the fact that Ms. Aliman was at the store after Mr. Palomo's termination really doesn't say anything because part of his original complaint was that Ms. Aliman was always at his store. She was doing her job there. And so even assuming the customer did see her there... But did she absorb his job functions? Between her and Mr. Lozano. But I would note that this court has recognized that when job duties are just spread out... It depends on whether they're spread or whether they're just given to some one person and just not called the same thing. That's the issue. So I would like to hear from her what happened in this case. While it's not in the summary judgment record because the evidence was not obtained, what actually... Y'all didn't put it in the record with your affidavit? We did put it in the record that, given that she did not replace him, the job duties were spread between Mr. Lozano, Ms. Aliman, and then the store clerk. And it says that in the affidavit specifically? I don't believe so, no, Your Honor. But they didn't prove anything to the contrary. That's correct. But it would have been easier if you had put that in there. I understand that, Your Honor. Hindsight always being 50-50. But I felt given it being Mr. Palomo's burden of proof to establish the fact that he was replaced, and I would also... And y'all have said explicitly he wasn't. We have said that explicitly. And so spreading out his work among people that were already there doesn't count on prong four, right? That's correct. Well, he could if it was given to one person and that became their duties and they were still on the protected class. But I would also... Non-protected class, you know. There is, despite the representations that were made, there is no evidence in the record that Ms. Alleman is 32 years old. None. There is no evidence as to her age at all. And I think that's very important. Okay. Did you have anything else? Unless you had other questions. Okay, thank you. And again, I apologize. Thank you. You saved time. Yes, you have time for rebuttal. Thank you, Judge. May it please the court. I don't have much other than to address that last point by Judge Haynes. That there is... This is not a situation where there was a reduction in force or where there was a layoff that would require the employer to spread duties or have an absorption of duties take place. This was an outright termination. This termination happened shortly after the hotline report. And if we are requiring individuals that feel they have been discriminated against the workplace or are opposing discriminatory conduct in the workplace, regardless of whether you are a male or a female, that's going to create one heck of a slippery slope because most folks aren't familiar with the terms that are buzzwords in courts like this. Well, it doesn't have to be a buzzword. It just has to give some rise to, I think I'm being asked to do something discriminatory. And that's the problem. I mean, I don't think it's a buzzword to come in and go, I don't want to fire men just because they're men. That doesn't mean you know the law and you can cite the statute and the rule and the this and the that. But, I mean, that is what he needed to say if that's what he was complaining about. If he says that it's inappropriate, he believes it's not fair, those are obviously value-laden terms. And to an untrained individual, someone that has not gone through law school or otherwise, those terms may suffice. Those may be sufficient to a lay person. But if I say it's not fair to fire me, how do you know that's because I think you're firing me because I'm a woman as opposed to because you didn't like the work I did or because you're just a tough boss or a lot of other reasons. I mean, there's all kinds of reasons I could feel I was unfairly fired by a woman who was my age. So it wouldn't be based on that. Well, that's an excellent point, but it would be for a jury to decide and not for any of us. So anytime anyone says somebody's being unfairly fired, they are raising gender, age, race, and all other categories, disability, and all other categories that we're not supposed to discriminate against. Absolutely not, Judge. Absolutely not. That is not what I'm saying at all. Wasn't there something in the record that the plaintiff even agreed that these two men needed to be fired? Not that I'm aware of, Judge. But what we're looking at here, it's not the plaintiff's duty or obligation to terminate. He didn't have the ability to hire, fire, or reprimand. In these contexts, we're talking about otherwise peer-level employees. But what's important is not what my client believed in that context. It's why the bad actor did it. And so when you take into account the comments that were made by this bad actor, you take into account, and I know it's not ideal, but we do know for the fourth prong that there is at minimum some fact question as to what the functionality was of Martha Aleman in that role. And I really can't stress enough that I think it would be dangerous to basically set context aside here. So it may not be the most ideal form of evidence for that fourth prong, but it is evidence. When we take those things together, it's clear that the trial court erred in its finding to dismiss this case. And unless there's anything further, I've made my presentation. Thank you very much. Thank you for your time. Those are both arguments. This case is submitted.